# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GALLERY CORP., d/b/a Mattress Gallery,<br><br>                Debtor. | Chapter 11<br><br>Case No. 07-11628 (KG) |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF GALLERY CORP., d/b/a Mattress Gallery,<br><br>                Plaintiff,<br>v.<br><br>KIMCO SECURITIES CORPORATION,<br><br>                Defendant. | Adversary Proceeding No. 08-_____ |

## **ADVERSARY COMPLAINT**

The Official Committee of Unsecured Creditors ("Plaintiff" or the "Committee") of Gallery Corp., d/b/a Mattress Gallery (the "Debtor"), by and through its counsel, respectfully states the following by way of complaint against the above-captioned defendant:

      1.     The Committee brings this Complaint for the purpose of establishing the extent and priority of certain security interests allegedly conveyed by the Debtor in favor of defendant Kimco Securities Corp. ("Kimco"). As set forth below, the loan documents and public filings executed in connection with the Kimco transaction do not establish a perfected security interest in the Debtor's real estate leases, fixtures, security deposits or general intangibles. As a result,

the Committee requests that the Court determine that Kimco does not possess a secured claim with respect to these assets, and for other related relief.

## BACKGROUND

2. On November 1, 2007 (the "Petition Date"), the Debtor commenced a case under title 11 of the United States Code, 11 U.S.C. §101 *et seq.* (as amended, the "Bankruptcy Code") by filing a voluntary petition for relief. The Debtor is continuing in possession of its assets and is operating its business, as a debtor in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in this case.

4. On November 8, 2007, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

5. Kimco Securities Corporation ("Kimco"), upon information and belief is a corporation with a mailing address of 3333 New Hyde Park Road, New Hyde Park, NY 11042.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and the claims set forth in this matter pursuant to 28 U.S.C. §1334(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. §1409

8. This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

## FACTUAL BACKGROUND

### The Debtor's Business

9. The Debtor operated a chain of retail mattress stores located in Southern California. As of the Petition Date, the Debtor was a party to 54 commercial real estate leases (the "Real Estate Leases") for the retail stores it operated. The stores were fit out with certain leasehold improvements to facilitate the use of the leased premises for the Debtor's business

operations (the "Leasehold Improvements"). Upon information and belief, the Leasehold Improvements consisted of furniture and equipment owned or leased by the Debtor, as well as certain fixture improvements, such as permanent walls, partitions, HVAC systems, electrical systems and other similar improvements to the leased premises (collectively, the "Fixtures").

10. In connection with the Real Estate Leases, the Debtor paid security deposits to the landlords totaling $963,937.46 as of the Petition Date (the "Security Deposits").

## The Prepetition Loan Agreement Between the Debtor And Kimco

11. Pursuant to the terms and conditions of a Revolving Loan and Security Agreement (the "Loan Agreement") by and between the Debtor, Pacific Coast Mattress, Inc. ("Pacific") and Kimco dated May 1, 2007, Kimco agreed to extend certain loans and other financing accommodations to the Debtor and Pacific, its parent, in an amount up to the principal sum of $5,000,000 pursuant to the terms and conditions thereof. A true and correct copy of the Loan Agreement is attached hereto as Exhibit A.

12. To further memorialize the loans evidenced in the Loan Agreement, Pacific and the Debtor executed and delivered to Kimco that certain Revolving Credit Grid Promissory Note (the "Note"). A true and correct copy of the Note is attached hereto, made a part hereof and marked as Exhibit B.

13. In addition to the Loan Agreement and the Note, Pacific and the Debtor, as "Debtor" and Kimco, as "Secured Party", executed that certain General Security Agreement (the "Security Agreement"), which describes the grant of certain security interests by the Debtor and Pacific in favor of Kimco. A true and correct copy of the Security Agreement is attached hereto, made a part hereof and marked as Exhibit C. The Loan Agreement, the Note and the Security Agreement are collectively referred to hereinafter as the "Loan Documents."

14. The financing accommodations described in the Loan Documents represented a refinancing of prior existing loans extended by Kimco to the Debtor in 2004.

15. On or about May 1, 2007, Kimco filed with the Delaware Secretary of State a financing statement on form UCC-1 against the Debtor (the "Financing Statement") purporting to perfect the security interests conveyed by the Debtor pursuant to the Loan Documents. A true and correct copy of the Financing Statement is attached hereto, made a part hereof and marked as Exhibit D.

16. While the Loan Documents and the Financing Statement purport to memorialize a security interest in the Real Estate Leases, the Security Deposits and the Fixtures, Kimco did not, at any time prior to the Petition Date, take any actions required under applicable law to properly perfect a security interest in this collateral. Specifically, Kimco did not (a) file any financing statement or take any other action required under either Delaware law or California law to perfect a security interest in the Fixtures; and (b) did not record any leasehold mortgage, obtain an executed assignment of the Real Estate Leases or Security Deposits from the landlords or the Debtor or otherwise perfect a lien under either California law or Delaware law with respect to these interests.

17. The description of the purported collateral in the Financing Statement contains the following paragraph with respect to the Debtor's general intangibles:

> (c) (i) All of Debtor's present and future accounts, contract rights, general intangibles, chattel paper, documents and instruments, as such terms are defined in the Uniform Commercial Code ("UCC"), including (without limitation) all present and future choses in action and reversionary interest in property rights of Debtor, and all obligations for the payment of money arising out of Debtor's sale of goods or rendition of services **(other than those contract rights, general intangibles, documents, instruments and choses of action not related to the Raleigh, North Carolina are operations of the Debtor)** (all of the foregoing, collectively,

-4-

"Accounts"); (ii) all of Debtor's rights, remedies, security and liens in, to and in respect of the Accounts, including, without limitation, rights of stoppage in transit, replevin, repossession and reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, guaranties or other contracts of suretyship with respect to the Accounts, deposits or other security for the obligation of any debtor or obligor in any way obligated on or in connection with any Account, and credit and other insurance; (iii) all of Debtor's right, title and interest in, to and in respect of all goods relating to, or which by sale have resulted in, Accounts, including without limitation, all goods described in invoices or other documents or instruments with representing or evidencing, any Account , and all returned, reclaimed or repossessed goods; (iv) all of Debtor's deposit accounts, as such term is defined in the UCC; (v) all books, records, ledger cards, computer programs and other property and general intangibles at any time evidencing or relating to the Accounts; and (vi) all of Debtor's other general intangibles of every kind and description, whether now existing or hereafter arising, including (without limitation) trademarks, tradenames, tradestyles, service marks, patents, copyrights and Federal, State and local tar refund claims of all kinds.

See Exhibit D (Emphasis Added).

18. Pursuant to the collateral description set forth in the Financing Statement, the Debtor's conveyance of a security interest in its general intangibles is subject to the following limitation: "other than those contact rights, general intangibles, documents, instruments and choses of action not related to the Raleigh, North Carolina area operations of the Debtor". *See* Exhibit D. As a result of this limiting language, Kimco did not perfect a security interest in any general intangibles of the Debtor other than general intangibles that were related to the Raleigh, North Carolina area operations of the Debtor.

19. As of the Petition Date, the Debtor did not have any operations in Raleigh, North Carolina and all of the Debtor's assets were located in California or arose solely from the Debtor's business operations in California. As a result, any general intangibles associated with the Debtor's operations arose exclusively in California and are therefore not covered by the collateral description set forth in the Financing Statement.

20. The Debtor operated its business under the Loan Agreement described above until November 1, 2007, when it filed for chapter 11 relief. Kimco did not provide any post-petition financing to the Debtor.

### The Debtor-In-Possession Financing

21. In the time-period immediately preceding the Petition Date, the Debtor negotiated the terms for post-petition financing with OMG Acquisition Corporation ("the DIP Lender"), an affiliate of Ortho Mattress, Inc. ("Ortho"), to provide monies sufficient to fund the Debtor's operations through a sale of the Debtor's stock to Ortho.

22. On the Petition Date, the Debtor filed an Emergency Motion for Entry of an Interim and Final Order Approving the Debtor's Stipulation (A) Authorizing Postpetition Financing, (B) Granting Security Interest and Superpriority Claims Pursuant to 11 U.S.C. §364 and (C) Granting Additional Relief (the "DIP Motion").

23. On November 2, 2007 the Court entered the Interim Order (i) Authorizing Debtor to Obtain Postpetition Financing Pursuant to Section 363 and 364 of the Bankruptcy Code, (ii) Granting Liens and Superpriority Claims to Postpetition Lenders Pursuant to Section 364 of the Bankruptcy Code, and (iii) Providing Adequate Protection to Prepetition Lenders Pursuant to Sections 361, 362 and 364 of he Bankruptcy Code (the "DIP Financing") (D.I. 33, the "First Interim DIP Order"). On November 26, the Court entered the Second Interim Order approving the DIP Financing. (the "Second Interim DIP Order"). The First Interim DIP Order and the Second Interim DIP Order both confer upon Committee the right to bring this complaint against Kimco.

24. Under the DIP Financing, the Debtor conveyed to the DIP Lender second priority liens on all of Kimco's pre-petition collateral and first priority liens on property to which Kimco did not possess a perfected security interest as of the Petition Date. The cash collateral

provisions of the First Interim DIP Order and the Second Interim DIP Order provide specifically that the DIP Lender was to receive a first priority security interest in the Debtor's leasehold interests to secure advances made under the DIP Financing.

25. The First Interim DIP Order and the Second Interim DIP Order provide Kimco with replacement liens in (i) items of postpetition property that are of the same character as Kimco's prepetition collateral, only to the extent of the diminution of value of Kimco's validly perfected prepetition collateral; and (ii) a lien in the Debtor's leasehold interests, junior to the DIP Lender's first-priority lien, only to the extend of the diminution of value of Kimco's validly perfected prepetition collateral.

26. The DIP Financing enabled the Debtor to continue to operate in chapter 11 and thereby preserve the going concern value of the Debtor's assets. Pursuant to an order of this Court dated December 7, 2007 (D.I. 144, the "Sale Order"), the Debtor sold substantially all of its assets in a sale under section 363 of the Bankruptcy Code. The sale approved by the Sale Order also closed on December 7, 2007 (the "Closing Date"). The Debtor's operation in chapter 11 and the sale enabled Kimco to avoid the forced liquidation of its collateral.

27. The Committee does not dispute that Kimco possessed a valid and perfected lien as of the Petition Date in the Debtor's inventory, accounts receivable and furniture and equipment (to the extent such furniture and equipment are not fixtures under applicable law).

28. Kimco did not, however, take the necessary steps to perfect any security interest in the Debtor's general intangibles, Real Estate Leases, Security Deposits, or Fixtures under applicable law.

-7-

PHIL1 766532-4

29. As a result of the foregoing, as of the Petition Date, Kimco did not possess a perfected security interest in the Debtor's general intangibles, Real Estate Leases, Security Deposits, or Fixtures.

## COUNT I

### DETERMINATION THAT KIMCO DOES NOT POSSESS A PERFECTED SECURITY INTEREST AGAINST THE DEBTOR'S REAL ESTATE LEASES, FIXTURES, SECURITY DEPOSITS OR GENERAL INTANGIBLES

30. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

31. As set forth above, prior to the Petition Date, Kimco did not perfect any security interest in the Debtor's Real Estate Leases, Fixtures, Security Deposits, and General Intangibles.

32. The Court should determine that Kimco did not possess a secured claim in the Debtor's Real Estate Leases, Fixtures, Security Deposits, General Intangibles or proceeds thereof as of the Petition Date.

WHEREFORE, Plaintiff requests that the Court determine that Kimco did not possess a perfected security interest in the Debtor's Real Estate Leases, Security Deposits, Fixtures or General Intangibles, together with such other and further relief as this Court deems just and proper.

## COUNT II

### DETERMINATION THAT KIMCO IS NOT ENTITLED TO ANY REPLACEMENT LIENS UNDER THE DIP FINANICNG ORDERS

33. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

34. As set forth above, the First Interim DIP Financing Order and the Second Interim DIP Financing Order granted Kimco certain replacement liens, which right arises solely to the

extent of the diminution of value in the items of collateral on which Kimco possessed a valid perfected security interest as of the Petition Date.

35. With respect to Kimco's right to replacement liens pursuant to the First Interim DIP Financing Order and the Second Interim DIP Financing Order, the Court should determine that there was no diminution of value in Kimco's validly perfected prepetition collateral that would give rise to a replacement lien.

WHEREFORE, Plaintiff requests that the Court determine that Kimco is not entitled to any replacement liens resulting from the diminution in value of any of Kimco's validly perfected prepetition collateral after the Petition Date and hence that Kimco has no replacement lien on the Debtor's Real Estate Leases, Security Deposits, Fixtures or General Intangibles, together with such other and further relief as this Court deems just and proper.

## COUNT III

## AVOIDANCE OF LIEN -- 11 U.S.C. §544

36. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

37. Pursuant to Section 544 of the Bankruptcy Code, the Trustee may act as lien creditor, as successor to certain creditors and as bona fide purchasers.

38. As a result of the foregoing, the Debtor should be treated as a subsequent lien creditor, successor or bona fide purchaser with respect to the Real Estate Leases, the Fixtures, the Security Deposits, the general intangibles and the proceeds thereof, such that any value in this property will inure to the benefit of the Debtor's estate and, derivatively, the interests of unsecured creditors.

WHEREFORE, Plaintiff requests that this Court enter an order establishing a bona fide lien or interest in favor of the Debtor's estate under Section 544 of the Bankruptcy Code, together with such other relief as this Court feels is just and proper.

## COUNT IV

## PRESERVATION OF LIEN FOR ESTATE – 11 U.S.C. §551

39. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

40. To the extent the Court determines that any security interest possessed by Kimco is to be avoided pursuant to Section 544 of the Bankruptcy Code, the value of the avoided lien or transfer should be preserved for the of the estate and, derivatively, for the interest of unsecured creditors.

WHEREFORE, Plaintiff requests that this Court enter an order preserving any avoided lien of Kimco for the benefit of the estate under Section 551 of the Bankruptcy Code, together with such other and further relief as this Court feels is just and proper.

## COUNT IV

## SURCHARGE OF COLLATERAL PURSUANT TO 11 U.S.C. § 506(c)

41. Plaintiff repeats and realleges each of the allegations contained in the preceding paragraphs as if fully set forth herein.

42. In order to complete the sale of the Debtor's assets as set forth in the Sale Order, the Debtor incurred administrative costs and expenses to maintain its business operations and therefore preserve the going concern value of its business, which was required in order to complete the sale transaction.

43. Administrative costs and expenses were incurred by the Debtor between the Petition Date and the Closing Date on the sale. The Administrative costs incurred by the Debtor

were reasonable and necessary for the preservation and disposition of Kimco's collateral and other assets of the Debtor's estate.

44. As a result of the foregoing, Kimco received a benefit from the expenditure of administrative costs that were necessary to preserve the going concern operations of the Debtor that enabled the sale to occur.

45. Pursuant to Section 506(c) of the Bankruptcy Code, the Debtor's Estate is entitled to recover an amount determined by the Court to be the reasonable and necessary costs incurred by the Debtor to preserve Kimco's collateral through the Closing Date on the sale.

WHEREFORE, Plaintiff requests that the Court award the Debtor's estate a surcharge from the value of Kimco's collateral in an amount to be determined by the Court, and such other relief as it is just and proper.

Dated: January 7, 2008

KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS, LLP

/s/ Michael W. Yurkewicz
Joanne B. Wills (#2357)
Richard M. Beck (#3370)
Michael W. Yurkewicz (#4165)
919 Market Street, Suite 1000
Wilmington, Delaware 19801
(302) 426-1189 (telephone)
(302) 426-9193 (fax)
jwills@klehr.com (e-mail)
rbeck@klehr.com
myurkewicz@klehr.com

*Counsel to the Official Committee of Unsecured Creditors*